IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** § | | |
| § | | |
| - vs - § | CRIMINAL No.   06-102 (JDB) | |
| § | | |
| **ANDERSON STRAKER,** *el al.* § | | |
| § | | |
| Defendants. § | | |

**GOVERNMENT'S RESPONSE TO DEFENDANT STRAKER'S
MOTION FOR ORDER TO TRANSFER DEFENDANT
FROM ADMINISTRATIVE SEGREGATION INTO
GENERAL POPULATION AT THE D.C. JAIL
<u>PENDING TRIAL</u>**

The United States of America ("United States" or "Government") responds to defendant Anderson Straker's Motion for Order to Transfer Defendant From Administrative Segregation into General Population at the D.C. Jail Pending Trial ("Defendant's Motion"), as follows:

*Nature of the Case*

Defendant Anderson Straker ("Mr. Straker" or "defendant") is one of eleven remaining Trinidadian nationals who have been indicted in the District of Columbia for Conspiracy to Commit Hostage Taking Resulting in Death and with Hostage Taking Resulting in Death, both charges being in violation of 18 U.S.C. § 1203(a).  According to the allegations of the superseding Indictment, beginning on or about February 1, 2005 and ending on or about April 15, 2005, Mr. Straker and his co-conspirators, embarked upon a common plan to obtain the money of American citizen, Balram Maharaj, who was a visitor to the Island of Trinidad and who had relatives there.  The conspirators' initial plan was to kidnap Mr. Maharaj's 5-year old son,

Dinesh Maharaj, and to hold Dinesh for ransom.  However, the conspirators later discarded the initial plan and determined to kidnap Balram Maharaj and sought to obtain a ransom of Mr. Maharaj's money, from Mr. Maharaj's relatives, for his release.  On April 6, 2005, in accordance with their plan, Balram Maharaj was abducted. and a ransom of $3,000,000 Trinidad (approximately $500,000 US) was demanded for his release.  Mr. Maharaj was held captive at a hideout in a mountainous jungle region of Trinidad.  On or about April 13, 2005, Mr. Maharaj expired at the remote hideout, as he languished in the hands of the conspirators.  Following Mr. Maharaj's death, members of the conspiracy dismembered his body and buried his body parts at another remote location in the mountainous jungle.

By April 15, 2005, the ransom demands had ceased.

On April 27, 2005, the United States Embassy issued a press release, *inter alia*, offering a reward of $10,000 US for information leading to the location of Mr. Maharaj and to the arrest and conviction of those responsible for the abduction of Balram Maharaj.

In January of 2006, Mr. Maharaj's dismembered and decomposed body was located in a mountainous jungle region in Trinidad.

### The Allegations of Defendant's Motion

In his Motion, Mr. Straker claims he has been placed in "administrative segregation" at the District of Columbia jail, see Motion, ¶ 4, and that such placement of him is interfering generally and specifically with his ability to prepare adequately his defense. [*See* Motion, *passim*][1]  Defendant's Motion acknowledges that prison authorities have "wide discretion to

---

[1] The Government is disappointed that Mr. Straker's attorney did not contact the Government, nor, on information and belief, the General Counsel's Office for the D.C. Jail, in order to discuss this matter prior to filing Defendant's Motion.  Rather, the Motion was filed with

decide appropriate methods of handling their wards," id. ¶ 8 (citing cases), but says that this discretion is not unlimited and that it is interfering defendant's Due Process rights. Id. The crux of Defendant's Motion appears in the Motion's final numbered paragraph (¶ 10), in which Mr. Straker alleges "[u]pon information and belief, there is no legitimate reason for defendant to be held in administrative segregation. Accordingly, defendant should be placed in general population pending trial...." Id.

Hence, Mr. Straker's Motion seeks mandamus relief against the warden of the District of Columbia Jail.

### The United States is an Interested Party to Defendant's Motion

To be sure, the United States does not operate the District of Columbia Jail, nor has the United States requested that Mr. Straker be held in "administrative segregation."[2] However, the United States did request -- and continues to request -- of the District of Columbia Department of Corrections that Mr. Straker *and all of the other defendants* in this matter be separated from one another. Mr. Straker is one of the four most recently arrived defendants in this case. Three of the earlier-arrived defendants have pled guilty. Four additional defendants may arrive early in 2008. If convicted, all of these defendants are facing mandatory life imprisonment. Hence, there exist undeniable motivations for mischief or worse. Moreover, beyond the ordinary security and integrity concerns weighing in favor of separating co-defendants in criminal cases, as the Court

---

the unsupported allegation "[u]pon information and belief, there is no legitimate reason for defendant to be held in administrative segregation." [Motion, ¶ 10]

[2] In the Government's view, the District of Columbia Department of Corrections is an indispensable party to Defendant's Motion. *See* Fed. R. Civ. Pro. 19.

and Mr. Straker's attorney are aware[3] that at the 2007 trial of co-conspirator David Suchit, evidence was elicited that many of the others individuals who are currently indicted in this matter were involved in various other hostage-takings for ransom in Trinidad and that at least one other victim was killed. Further, in the Suchit trial, evidence was admitted that three of the people indicted in this case were current or former Trinidadian Military and/or Special Forces personnel and that defendant Wayne Pierre was the leader of what amounted to a Lower Santa Cruz Forest area "crew" of violent criminals, and that the "crew" included, among others, Kevin Nixon aka Shaka; Christopher Sealey aka Christopher Bourne aka Boyie; Zion Clarke; and Kevon Demerieux aka Ketchit.

For the reasons set forth below, Mr. Straker's Motion is without merit and should be denied.

### DEFENDANT'S MOTION IS WITHOUT MERIT AND SHOULD BE DENIED

Defendant's Motion fails to establish any right to the injunctive relief it seeks. As indicated above, the relief sought in Defendant's Motion is in the nature of mandamus relief, to wit, an order from the Court directing the warden at the D.C. Jail to exercise his or her discretion in a particular manner. However, issuance of a writ of mandamus is an extraordinary remedy, to be used only under exceptional circumstances and where essential to justice. *See* Haneke v. Secretary of HEW, 535 F.2d 1291, 1296 (D.C. Cir. 1976); In Re Tripati, 836 F.2d 1406, 1407 (D.C. Cir. 1988) (*citing* Starnes v. McGuire, 512 F.2d 918, 929 (D.C. Cir. 1974) (*en banc*)). Although a federal district court has the authority to issue a writ of mandamus pursuant to 28

---

[3] Mr. Straker's attorney has obtained, *inter alia*, with a copy of the transcript of the testimony presented at the Suchit trial.

U.S.C. § 1361, its issuance is not required; rather, mandamus is issued at the discretion of the Court. National Wildlife Federation v. United States, 626 F.2d 917, 923 (D.C. Cir. 1980).

Mandamus generally will not issue unless there is [1] a clear right in the movant to the relief sought, [2] a plainly defined and [3] nondiscretionary duty on the part of the respondent to honor that right, and [4] no other adequate remedy, either judicial or administrative, available. Ganem v. Heckler, 746 F.2d 844, 852 (D.C. Cir. 1984); *accord* In Re Lane, 801 F.2d 1040, 1042 (8th Cir. 1986); Homewood Professional Care Center, Ltd. v. Heckler, 764 F.2d 1242, 1251 (7th Cir. 1985); Jones v. Alexander, 609 F.2d 778 (5th Cir. 1980); Billiteri v. U.S. Board of Parole, 541 F.2d 938 (2nd Cir. 1976).

The requirement of a clear duty to act has been interpreted to mean that the duty of the federal officer sued must be "ministerial, plainly defined and peremptory." Jeno's Inc. v. Commissioner of Patents and Trademarks, 498 F. Supp. 472, 476 (D. Minn. 1980). The act sought to be compelled must be "a clear nondiscretionary duty." Pittston Coal Group v. Sebben, 488 U.S. 105, 122-23 (1988); *accord* Nova Stylings, Inc. v. Ladd, 695 F.2d 1179 (9th Cir. 1983); Welch v. Donovan, 551 F. Supp. 809 (D.D.C. 1982). "It is well settled that a writ of mandamus is not available to compel discretionary acts." Cox v. Secretary of Labor, 739 F. Supp. 28, 30 (D.D.C. 1990) (citations omitted).

Prison Authorities Have Broad Discretion

Prison authorities have broad discretion in administering the regulations designed to protect the order and security of the institutions they oversee. Thornburgh v. Abbott, 490 U.S. 401, 412-13, 416-19 (1989); *see also* O'Lone v. Estate of Shabazz, 482 U.S. 342, 349-50 (1987). Indeed, it was no doubt the exercise of that broad discretion that led to Mr. Straker's placement in

other-than the general population at the D.C. Jail to accomplish, among other possible legitimate ends, his separation from the other co-defendants in this case.

Because the warden of the D.C. Jail clearly has a significant interest in maintaining peace and good order in the D.C. Jail and in furthering the integrity of the D.C. Jail and jurisprudence, generally, and because those interests are necessarily heightened when dealing with multiple defendants housed in the same institution who are charged with extraordinarily serious violent offenses, many of whom have been involved in more than one murder, some of who have military and/or Special Forces training, and all of whom are facing life imprisonment, Mr. Straker's Motion is without merit and should be denied.

Moreover, in the absence of an allegation of any clear nondiscretionary duty by the warden of the D.C. Jail, as here, Mr. Straker's motion for injunctive relief should be denied.

WHEREFORE, for each of the independent reasons set forth above, Defendant Anderson Straker's Motion for Order to Transfer Defendant From Administrative Segregation into General Population at the D.C. Jail Pending Trial should be, in all things, denied.

Respectfully submitted,

JEFFREY A. TAYLOR (D.C. Bar No. 498610)
United States Attorney

By:  /S/
_____
BRUCE R. HEGYI (D.C. Bar No. 422741)
Assistant United States Attorney
Federal Major Crimes Section
555 Fourth Street, N.W., Room 4848
Washington, D.C.  20530
(202) 305-9637
(202) 353-9414 (fax)
www.bruce.hegyi@usdoj.gov

JEANNE M. HAUCH
Assistant United States Attorney
National Security Section
555 Fourth Street, N.W., 11th Floor
Washington, D.C. 20530
(202) 514-5776

CERTIFICATE OF SERVICE

      I hereby certify that on this 19th day of December, 2007, a true and correct copy of the above and foregoing GOVERNMENT'S RESPONSE TO DEFENDANT TO DEFENDANT STRAKER'S MOTION FOR ORDER TO TRANSFER DEFENDANT FROM ADMINISTRATIVE SEGREGATION INTO GENERAL POPULATION AT THE D.C. JAIL PENDING TRIAL was served on the following by First Class Mail, postage pre-paid, upon:

      STEVEN R. KIERSH, ESQUIRE
      717 D STREET, N.W.
      SUITE 400
      WASHINGTON, D.C.  20004

      MARIA AMATO, ESQUIRE
      CAROL BURROUGHS, ESQUIRE
      OFFICE OF THE GENERAL COUNSEL
      D.C. DEPARTMENT OF CORRECTIONS
      1923 VERMONT STREET, N.W., SUITE N102
      WASHINGTON, D.C.  20001

      /S/
      _____
      BRUCE R. HEGYI
      Assistant United States Attorney