UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

      v.            Criminal No.: 06-102 (JDB)

ANDERSON STRAKER

**ANDERSON STRAKER'S FIRST MOTION FOR
SEVERANCE OF DEFENDANTS**

Anderson Straker, by and through undersigned counsel, Steven R. Kiersh, does hereby move to have his case severed for trial from that of his codefendants. In support thereof, defendant sets forth as follows:

**I. BACKGROUND**

Anderson Staker is one of twelve citizens of Trinidad who has been named in an indictment in the United States District Court for the District of Columbia charging Conspiracy to Commit Hostage Taking Resulting in Death in violation of 18 U.S.C. § 1203 (a), Hostage Taking Resulting in Death in violation of 18 U.S.C. § 1203 (a), and Aiding and Abetting and Causing an Act to be done in violation of 18 U.S.C. § 2.

The conspiracy that is the framework for the indictment is alleged to have existed during the period of February 1, 2005 through April 15, 2005 in Trinidad. The object of the conspiracy was to obtain money belonging to Balram Maharaj. In order to accomplish the objective of the conspiracy, the Indictment alleges that members of the conspiracy discussed and agreed to kidnap Dinesh Maharaj (decedent's infant son in a plan that was abandoned) and in fact kidnapped Balram Maharj and demanded a ransom payment from

1

his family. In terms of overt acts to effectuate the goals of the purported conspiracy, defendant is alleged to have met with other coconspirators on April 6, 2005 at the Mellow Moods Bar to make final preparations for the kidnapping and, on April 8, 2005, defendant is alleged to have been taken to the location of the decedent to interrogate the decedent and attempt to obtain a proof of life statement.

Defendant is specifically not alleged to have been involved in any of the following activities:

   a. forcibly removing Mr. Maharaj from any premises;
   b. being in possession of a weapon;
   c. assaulting or otherwise torturing Mr. Maharaj;
   d, being involved with narcotics;
   e. dismembering Mr. Maharaj's body

The crimes that are alleged in the indictment are gruesome and clearly likely to inflame the passions of any prospective juror that is selected to hear the case. The Court is well acquainted with the underlying facts that include a forcible abduction of an American citizen, a prolonged period of captivity and the dismemberment of the decedent's body with the body parts placed into two canisters that were buried on the island.

Defendant submits that common sense and logic clearly suggest that he will be facing an uphill evidentiary battle from the first day of the proceedings when the panel of prospective jurors hears the hideous details of the crimes alleged in the indictment. Requiring Mr. Straker to be tried before a jury that will hear additional evidence about four brutal uncharged crimes that have no connection to him will make his already existing uphill battle an impossible burden to overcome.

## II. OTHER CRIMES EVIDENCE

On May 2, 2008, the United States file a Notice of Intention to Introduce Evidence Pursuant to Fed. R. E. Evid. 404(B) (other uncharged criminal acts). The Notice identifies four other kidnappings spanning a period of time of December16, 2004 through July 8, 2005 that involve individuals who have absolutely no connection to either Mr. Maharaj or Mr. Straker. The United States seeks to introduce the evidence of other crimes against codefendants Wayne Pierre and Kevin Nixon. The four uncharged kidnappings are summarized as follows:

1. **Kazim Rahim**  This occurred on May 4, 2005 at the corner of Sookia Trace and Arranguez Main Road. The victim was forced at gunpoint into a vehicle by two armed men who discharged their weapons in the air. Mr. Rahim was "beaten and tortured" by his captors. He sustained facial scarring and was burned with cigarettes. The victim was forced to travel with certain of his captors to collect a quantity of cocaine. He escaped from his captors after being taken to a home in Santa Cruz

2**. Dexter Jagdeo**. The victim was kidnapped at his place of business in Curepe Trinidad on December 16, 2004.Mr. Jagdeo was approached by two men who falsely stated they were police officers and forced him to the home of codefendant Wayne Pierre's father. During his ordeal he was "assaulted and interrogated". This victim was released after a ransom payment was made.

3. **Robin Ramadar:** He was kidnapped on March 4, 2005 in Aranguez, Trinidad by three armed men. During the kidnapping he was struck in the head by one of the gunmen. Mr. Ramadar was released after eight days of captivity following receipt of a ransom payment.

4. **<u>Gerard GoPaul:</u>** The last of the kidnappings occurred on July 8, 2005 from a bar in San Fernando, Trinidad. "The victim was beaten while being held hostage." The kidnappers rejected the ransom that was offered and instead chose to murder their victim. His decomposing body was found alongside a road with a black plastic bag covering his head.

Defendant takes no position concerning whether the proposed 404 (b) evidence fits within any of the exceptions articulated in *Drew v. United States*, 331 F.2d 85 (D.C. Cir. 1964). However, defendant does note that Wayne Pierre is alleged to have been the leader in all four of the uncharged kidnappings and that codefendants Jason Percival, Winston Gittens, Kevon Demerieux, Zion Clarke, Leon Nurse, Ricardo DeFour Kevin Nixon are alleged to have participated in some manner in the uncharged crimes. Accordingly, the jury will be hearing evidence about brutal, senseless and heartless uncharged crimes relating to almost everyone else in the Indictment. It is inconceivable that a jury's disgust with the evidence of the uncharged crimes will not prejudicially spillover to the detriment of rights guaranteed to Mr. Straker by the Due Process Clause of the United States Constitution.

### III. ARGUMENT

Fed. R. Crim. P. 8(b) permits joinder of defendants in the same indictment or information when the defendants "are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses". While there is a presumption in favor of joint trial in the proper circumstances, the preference for a joint trial "cannot trample a defendants' right to a fair trial." *United States v. Nicely*, 922 F.2d 850, 855 (D.C. Cir.1991). If the court determines the existence

of prejudice arising from joinder of defendants, "the court may order…a severance of defendants…." Fed. R. Cr. P. 14. Pursuant to Rule 14, "severance should be granted only if there is a serious risk that a joint trial would compromise a specific trial right of a properly joined defendant **or prevent the jury from making a reliable judgment about guilt or innocence**." *Zafiro v. United States*, 933 S.Ct. 933, 935 (!993) (emphasis supplied). Specific instances where a joint trial would prevent the jury from making a reliable judgment about guilt or innocence include inadmissibility of evidence if there were separate trials and markedly different degrees of culpability. *See United States v. Brown*, 16 F.3d 423 430 (D.C. Cir. 1994).

It is clear that if Anderson Straker's case was severed from that of his codefendants, Wayne Pierre and Kevin Nixon, the 404 (B) evidence would not be heard by the jury. Indeed, the government does not seek to introduce this evidence against defendant and there certainly is no other evidentiary basis upon which it could be offered.

Defendant further submits that the weight of the evidence to be offered at trial is far greater with respect to his codefendants. Kevin Nixon and Christopher Sealy are alleged to be the armed gunmen who dragged the decedent from the bar and held him in the back of a vehicle at gunpoint while he was driven to the hideout. Nixon is alleged to have turned the decedent over to others after covering the victim's mouth with duct tape and covering his head with a cloth. Wayne Pierre was involved in the initial planning of the dismemberment of the body of Mr. Maharaj; Wayne Pierre produced the containers to hold the dismembered body parts; and Wayne Pierre participated in the actual mutilation of the body.[1] "When the evidence against one or more defendants is far more damaging

---

[1] Defendant submits that if his case were tried alone the specifics of the dismemberment of the body would not have to be admitted into evidence. There is no suggestion that Anderson Straker was involved in this

5

than the evidence against another defendant, the prejudicial spillover may have deprived a defendant of a fair trial." *United States v. Manner*, 887 F.2d 317, 324 (D.C. Cir. 1989)

This Circuit has long recognized the potential dangers that are elemental in a multiple party conspiracy trial.

> [c]ourts have always kept in mind the problems inherent in trial of conspiracy cases involving numerous defendants. The Supreme Court has long recognized that is such cases the liberal use of evidence and the wide latitude accorded the prosecution may, and sometimes do, operate unfairly against an individual defendant. The dangers of transference of guilt are such that a court should use every safeguard to individualize each defendant in his relation to the mass. Particularly where there is a great disparity in the weight of the evidence, strongly establishing the guilt of some defendants, the danger persists that the guilt will improperly rub off on the others.

*United States v. Mardian*, 456 F.2d 973, 977-78 (D.C. Cir. 1976). quotations and internal citations omitted.

## IV. CONCLUSION

The other crimes evidence that the United States seeks to introduce is extremely prejudicial as a consequence of the nature of the offenses. It is hard to imagine a more terrifying circumstance than that of individuals being kidnapped off the street, tortured in a remote location, having their families preyed upon for ransom, and ultimately being murdered and dumped on the side of a road. Anderson Starker has absolutely no connection to these awful uncharged events. However, simply by virtue of being joined for trial, he will have to be present as these appalling events are attributed to his codefendants, and can only hope that somehow the jury can compartmentalize the evidence and realize that he had no involvement in these matters. The risk of spillover is

---

act. Any probative value that the dismemberment has as to Straker is clearly far outweighed by the enormous prejudicial effect of the testimony.

Case 1:06-cr-00102-JDB    Document 200    Filed 05/03/2008    Page 7 of 8

far too great and the consequences too severe to run the risk that Mr. Straker is presently facing. His case should be severed for trial from his codefendants.[2]

The disparity of the evidence between defendant and his codefendants is striking. The differences in the degrees of culpability are so vast that severance is the only means to ensure a fair consideration of the evidence.

WHEREFORE, the foregoing considered, defendant prays this Honorable Court sever his case from that of his codefendants for trial.

Respectfully submitted,

_____/s/_____
Steven R. Kiersh #323329
5335 Wisconsin Avenue, N.W., Suite 440
Washington, D.C. 20015
(202) 347-0200

## CERTIFICATE OF SERVICE

I HEREY CERTIFY that a true and accurate copy of the foregoing was served via PACER upon Bruce Hegyi, Esquire and Jeanne Hauche, Esquire, Assistant U.S. Attorneys 555 4th Street, N.W, Washington, D.C. 20530 and all other counsel of record on this the 3rd day of May, 20008.


_____/s/_____
Steven R. Kiersh

---

[2] The evidence about narcotics is of great concern to defendant. A severance will ensure that Mr. Straker will be tried without this inflammatory evidence being heard. There is no suggestion that drug testimony will be introduced against Anderson Straker. The door to this testimony is opened only through the uncharged conduct identified in the 404 (B) Notice.

7

Case 1:06-cr-00102-JDB   Document 200   Filed 05/03/2008   Page 8 of 8