IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** § § § § | |
| - vs - § | CRIMINAL No.  06-102-02 (JDB) |
| § § § | |
| **ANDERSON STRAKER,** *el al.* § § § | |
| Defendants. § § | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT STRAKER'S
SECOND MOTION TO COMPEL DISCOVERY**

The United States of America ("United States" or "Government") opposes defendant Anderson Straker's Second Motion to Compel Discovery ("Defendant's Motion") because, as set forth below, it is without merit.

*Nature of the Case*

Defendant Anderson Straker ("Mr. Straker" or "defendant") is one of twelve Trinidadian nationals who have been indicted in the District of Columbia for Conspiracy to Commit Hostage Taking Resulting in Death and with Hostage Taking Resulting in Death, both charges being in violation of 18 U.S.C. § 1203(a). According to the allegations of the superseding Indictment, beginning on or about February 1, 2005 and ending on or about April 15, 2005, Mr. Straker and his co-conspirators, embarked upon a common plan to obtain the money of American citizen, Balram Maharaj, who was a visitor to the Island of Trinidad and who had relatives there. The conspirators' initial plan was to kidnap Mr. Maharaj's 5-year old son, Dinesh Maharaj, and to hold Dinesh for ransom. However, the conspirators later discarded the initial plan and

determined to kidnap Balram Maharaj and sought to obtain a ransom of Mr. Maharaj's money, from Mr. Maharaj's relatives, for his release. On April 6, 2005, in accordance with their plan, Balram Maharaj was abducted. and a ransom of $3,000,000 Trinidad (approximately $500,000 US) was demanded for his release. Mr. Maharaj was held captive at a hideout in a mountainous jungle region of Trinidad. On or about April 13, 2005, Mr. Maharaj expired at the remote hideout, as he languished in the hands of the conspirators. Following Mr. Maharaj's death, members of the conspiracy dismembered his body and buried his body parts at another remote location in the mountainous jungle.

By April 15, 2005, the ransom demands had ceased.

In January of 2006, Mr. Maharaj's dismembered and decomposed body was located in a mountainous jungle region in Trinidad.

### The Allegations of Defendant's Motion

In his Motion, Mr. Straker claims he requires discovery that might provide him with a viable basis to claim the Government of the Republic of Trinidad & Tobago and the Government of the United States embarked upon a "joint venture" in this investigation such that the statements made by Mr. Straker should be suppressed. [*See* Motion, paras 1-2] More specifically, Mr. Straker says that, because there is no forensic evidence linking Mr. Straker to the crimes, the statements Mr. Straker made to the Trinidadians and the FBI and to the FBI on extradition "have heightened significance." [Motion, para 1] In his Motion, Mr. Straker errantly states that he was "jointly interviewed by law enforcement officials from the two governments..." [Motion, para 5] In order to try to support a possible "joint venture" claim, Mr. Straker sent a discovery request to the Government seeking "copies of any and all correspondence, memoranda,

or any written documentation between the United States and Trinidad/Tobago that relates to the murder of Balram Maharaj." [Motion, para 3]

As shown below, the allegations of Mr. Straker's Motion are without merit.

**THE ALLEGATIONS OF DEFENDANT'S MOTION ARE WITHOUT MERIT AND, AS SET FORTH BELOW, ARE MOOT**

The is "no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Nevertheless, the Constitution mandates that a defendant be accorded the opportunity to present a defense. *See, e.g., Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *United States v. Libby*, 453 F.Supp.2d 35, 42 (D.D.C. 2006) (Walton, J.). Generally speaking, discovery in a criminal prosecution are governed by Fed. R. Crim. Pro. 16. Presumably, Defendant's Motion is made in reliance on Rule 16(E), which provides in pertinent part that the defendant may request from the Government documents and things, "if the item is within the government's possession, custody, and control and: (i) the item is material to preparing the defense...."

**Mr. Straker's Motion is Based on an Erroneous Assertion**

In this case, Special Agents of the Federal Bureau of Investigations ("FBI") sought to interview Mr. Straker on two occasions:[1] (1) on January 9, 2006, and (2) on July 29, 2007. The first attempted interview occurred in La Horquetta, Trinidad; the second interview began in San Juan, Puerto Rico and was continued in Washington, D.C. Contrary to the allegations of Mr. Straker's Motion, on neither occasion was Mr. Straker actually interviewed "jointly" by the FBI

---

[1] Mr. Straker has been provided with Rule 16 discovery in this case. Among the items provided to Mr. Straker were the FBI 302s concerning the brief/preliminary interview with Mr. Straker on January 9, 2006 and the interview with Mr. Straker on July 29, 2007.

and Trinidadian authorities. Mr. Straker's Motion does not allege, nor could it, that there were any Trinidadian authorities present when Mr. Straker waived his *Miranda* rights and was interviewed on July 29, 2007 in Puerto Rico/Washington, D.C., and in fact there were none. It is true that on January 9, 2006, Det. Wendell Lucas accompanied Mr. Straker to the interview area within a holding facility in Trinidad where the FBI hoped to interview Mr. Straker. However, Det. Lucas was only in the room for a few minutes, before leaving Mr. Straker alone with the FBI Agents for their interview with Mr. Straker. As set forth in the FBI-302 (attached hereto), during that brief interview, Mr. Straker provided certain personal/familial information, but stated that he was unwilling at that time to waive his rights (as set forth in the International Notification of Rights) and told the FBI Agents that Mr. Straker had already spoken briefly with his attorney (using a cellular telephone smuggled by another prisoner into the jail) and that his attorney advised him not to say anything, but Mr. Straker would be willing to speak to the Agents after he had "access" to his attorney . [*See* FBI-302, pages 1-2]

### **Mr. Straker's Motion Is Misguided and Without Merit**

In the related case of *United States v. Suchit*, 480 F.Supp.2d 39(D.D.C. 2007), this Court observed, *inter alia*, with regard to a "joint venture" analysis to statements made abroad:

> [W]hen a person makes a statement ***to foreign police officers abroad***, rather than to U.S. officers, additional issues regarding the reach of the Constitution may arise – issues which need not be resolved here. The first is the threshold issue of the applicability of *Miranda* to statements obtained by foreign officers acting abroad. Such statements generally are not governed by Miranda unless, under the joint venture doctrine, United States law enforcement agents actively participate in the questioning of the defendant or the foreign officials act as agents or virtual agents of the United States.

480 F.Supp.2d at 56 (emphasis provided).

Here, the statements two statements made by Mr. Straker were made to United States

personnel, and not to foreign officials. Moreover, the second statement (July 27, 2007) was not made on foreign soil, but was rather made in Puerto Rico and in Washington, D.C., with no foreign officials present for any portion thereof. Hence, the "joint venture" doctrine should not apply to either statement and cannot apply to the July 27, 2007 statement.[2]

Because, as established above, the "joint venture" doctrine is not legitimately implicated by the allegations in Mr. Straker's Motion -- which Motion seeks evidence solely to suppress Mr. Straker's two statements – Mr. Straker's Motion is without merit and should be denied.

---

[2] The facts surrounding the January 9, 2006 statement cannot make out a "joint venture," in any event. *See, e.g.*, *United States v. Yousef*, 327 F.3d 56, 146 (2d Cir. 2005); *United States v. Emery*, 591 F.2d 1266, 1267 (9th Cir. 1978) (holding joint venture doctrine applied where DEA agent coordinated foreign arrest and was present during questioning by foreign police); *United States v. Morrow*, 537 F.2d 120, 140-41 (5th Cir. 1976) (finding no joint venture where United States officers merely furnish information to foreign officials); *United States v. Nagelberg*, 434 F.2d 585, 587 n.1 (2d Cir. 1970) (*Miranda* rule has no application where arrest and interrogation focused upon violations of Canadian law despite presence of United States law enforcement officer); *Stonehill v. United States*, 405 F.2d 738, 746 (9th Cir. 1968), *cert. denied*, 395 U.S. 960 (1969) (finding no joint venture when United States officials offered information to Philippine officials and had knowledge of raid conducted by Philippine officials); *United States v. Abu Ali*, 395 F. Supp.2d 338, 381-82 (E.D. Va. 2005) (finding no joint venture between United States and Saudi officials because of a lack of "substantial" United States involvement in the interrogation of the defendant); *and cf.*, *United States v. Peterson*, 812 F.2d 486, 488-89 (9th Cir. 1987) (Kennedy, J.) (concluding that a Philippines wiretapping operation with "substantial" United States involvement was a joint venture, but finding no Fourth Amendment violation because the search met the Fourth Amendment's reasonableness requirement); *United States v. Marzano,* 537 F.2d 257, 269-70 (7th Cir. 1976) (finding no joint venture where United States law enforcement officers were merely present at the scene of a search and seizure); *Birdsell v. United States*, 346 F.2d 775, 782 (5th Cir. 1965) (holding although United States officers were "present and cooperating in some degree" with local officials, there was no joint venture sufficient to invoke the protections of the Fourth Amendment).

### The Government Will Not Seek To Introduce Mr. Straker's January 9, 2006 Statement in It's Case In Chief

Despite the fact that Mr. Straker's Motion is without merit, the Government has determined it will not seek to introduce Mr. Straker's January 9, 2006 statement in its case in chief.[3]

### Mr. Straker's Motion Is Moot

Because the sole basis identified in Mr. Straker's Motion for seeking "copies of any and all correspondence, memoranda, or any written documentation between the United States and Trinidad/Tobago that relates to the murder of Balram Maharaj" is to support a possible "joint venture" argument to suppress Mr. Straker' s statements, and because Mr. Straker's Motion only identifies one interview as having (allegedly) been conducted "jointly" by the FBI and Trinidadian authorities (to wit, the January 9, 2006 interview), and because Mr. Straker's Motion does not (and cannot) allege that any Trinidadian authorities were present in Puerto Rico and Washington, D.C., during Mr. Straker's July 27, 2007 waiver of his *Miranda* rights and subsequent statement to the FBI, and because Mr. Straker's January 9, 2006 statement will not be introduced in the Government's case in chief at trial, Mr. Straker's Motion is moot, *see Olsen v. DEA*, 878 F.2d 1458, 1465 (D.C. Cir. 1989), and should be denied.

WHEREFORE, for each of the independent reasons set forth above, Defendant Anderson Straker's Second Motion to Compel Discovery should be, in all things, denied.

---

[3] The Government reserves the right to introduce Mr. Straker's January 9, 2006 statement, should it prove relevant, in Motions proceedings and/or in rebuttal at trial.

    Respectfully submitted,

JEFFREY A. TAYLOR (D.C. Bar No. 498610)
United States Attorney


By:        /S/
    _____
BRUCE R. HEGYI (D.C. Bar No. 422741)
Assistant United States Attorney
Federal Major Crimes Section
555 Fourth Street, N.W., Room 4848
Washington, D.C.  20530
(202) 305-9637
(202) 353-9414 (fax)
www.bruce.hegyi@usdoj.gov


JEANNE M. HAUCH
Assistant United States Attorney
National Security Section
555 Fourth Street, N.W., 11th Floor
Washington, D.C.  20530
(202) 514-5776