IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- vs -<br><br>ANDERSON STRAKER,<br>KEVIN NIXON,<br>WAYNE PIERRE,<br>CHRISTOPHER SEALEY,<br>also known as Christopher Boyd,<br>also known as Boyie, *et al.*<br><br>            Defendants. | CRIMINAL No.  06-102(JDB) |

**GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS
INDICTMENT ON EQUAL PROTECTION GROUNDS**

The United States of America ("United States" or "government") hereby opposes the motion of defendant Anderson Straker, his Motion to Dismiss Indictment on equal protection grounds (Document #190), such motion also joined in by defendants Kevin Nixon (Document #218), Wayne Pierre (Document #191) and Christopher Sealey (#222), and states as follows:

**I. Procedural Background**

On September 20, 2006, defendants Anderson Straker, Kevin Nixon, Wayne Pierre and Christopher Sealey, along with additional defendants, were indicted in a superseding indictment on one count of hostage taking resulting in death and one count of conspiracy to commit hostage taking resulting in death, both in violation of 18 U.S.C. § 1203. Defendant Straker moves to dismiss the indictment on the grounds that his rights have been violated under the Equal

Protection and Due Process Clauses of the United States Constitution.[1] The government disagrees and asks the Court to deny the motion.

## II. Argument

Defendant Straker argues that the indictment against him under the federal hostage taking statute, 18 U.S.C. § 1203 [*hereinafter* the Hostage Taking Act], should be dismissed because the statute is unconstitutional as applied to him. Defendant Straker is an alien who is charged with taking hostage a U.S. national abroad, resulting in the death of that U.S. national. Defendant Straker argues that the Hostage Taking Act violates the Equal Protection and Due Process Clauses. He contends that the Act discriminates unfairly on the basis of alienage, in that if he were a national of the United States, he could not be prosecuted in the United States for this crime. Defendant's argument is unpersuasive and contrary to caselaw in the five circuits of the Courts of Appeals which have addressed the issue. Defendant also contends that the Hostage Taking Act applies only to hostage seizures manifesting international terrorism rather than "garden variety" kidnapings. Defendant's argument is belied by the plain language of the Hostage Taking Act.

### A. The Hostage Taking Act is constitutional as applied to defendant.

The relevant parts of the Hostage Taking Act provide:

**(a)** Except as provided in subsection (b) of this section, whoever, whether inside or outside the United States, seizes or detains and threatens to kill, to injure, or to continue to detain another person in order to compel a third person or a governmental organization to do or abstain from doing any act as an explicit or implicit condition

---

[1] U.S. CONST. amend. V ("No person shall be . . . deprived of life, liberty, or property, without due process of law."); U.S. CONST. amend. XIV, § 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.").

for the release of the person detained, or attempts or conspires to do so, shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

**(b)(1)** It is not an offense under this section if the conduct required for the offense occurred outside the United States unless–

> **(A)** the offender or the person seized or detained is a national of the United States [...]

18 U.S.C. § 1203. As noted above, in this case, jurisdiction is based upon the facts that the person seized was a national of the United States and the defendant is an alien.

Defendant's argument must fail under applicable precedent. Five Courts of Appeals have addressed this issue and every one of them has rejected the claim that the alienage distinction in the Hostage Taking Act violates equal protection.[2] The Second, Fifth, Seventh, Ninth and Eleventh Circuits have held that the alienage distinction in the Act is subject to the lowest level of scrutiny, the rational-basis test, and that Congress had a rational basis for making the distinction. An analysis under the Equal Protection Clause involves two steps: first determining whether a law results in members of certain groups, in this case aliens, being treated differently, and if so, second, whether the distinction is justified under the appropriate level of scrutiny. While the Hostage Taking Act makes a classification based on alienage, in that either the offender or the victim must be a national of the United States under subsection (b)(1), that

---

[2] The Court of Appeals for the District of Columbia Circuit has not spoken to this issue. Nor, it appears, has any district court in this district opined directly on the issue. In United States v. Pineda, No. 04-232, 2006 U.S. Dist. LEXIS 17509, at *1 (D.D.C. Mar. 28, 2006), the district court held that the Hostage Taking Act indeed applied to defendant, rejecting his claim that the Act would not apply to him as the hostage taking at issue was part of an armed conflict covered by the Geneva Conventions and protocols, and the court remarked in a footnote that the Hostage Taking Act "has been upheld against several constitutional challenges." Id. at *23 n.14 (citing United States v. Santos-Riviera, 183 F.3d 367 (5th Cir. 1999) (holding that the statute did not violate equal protection principles by discriminating on the basis of alienage)).

classification is permissible and easily meets the appropriate level of scrutiny, in that it has a rational basis. See United States v. Ferreira, 275 F.3d 1020, 1024-27 (11th Cir. 2001), *cert. denied*, 535 U.S. 1028 (2002); United States v. Montenegro, 231 F.3d 389, 395 (7th Cir. 2000); United States v. Santos-Riviera, 183 F.3d 367, 372-74 (5th Cir.), *cert. denied*, 528 U.S. 1054 (1999); United States v. Lue, 134 F.3d 79, 86-87 (2nd Cir. 1998); United States v. Lopez-Flores, 63 F.3d 1468, 1473, 1475 (9th Cir. 1995), *cert. denied*, 516 U.S. 1082 (1996).

In United States v. Lue, 134 F.3d 79 (2nd Cir. 1998), the defendant, a foreign national, argued that the Act was unconstitutional because it "criminalizes conduct undertaken by foreign nationals which would not be criminal if undertaken by United States' nationals and because such a classification is not supported by a substantial governmental interest." Id. at 85. These are the same arguments made by defendant Straker in the instant case. The Second Circuit found these arguments devoid of merit. While the Act groups offenders on the basis of alienage, when the federal government makes such a distinction in the context of foreign nationals, it benefits from substantial deference and must meet only the rational basis standard. Id. The purpose of Congress in enacting the Hostage Taking Act was to implement the International Convention Against the Taking of Hostages, and thus to address a matter of grave concern to the international community. Id. at 87. With regard to the Act, Congress rationally concluded that certain categories of hostage takings are sufficiently likely to "involve matters implicating foreign policy or immigration concerns as to warrant a federal criminal proscription," and thus the distinction has a rational basis. Id. at 79.

Before Lue was decided, two other Courts of Appeals, the Fifth Circuit and the Ninth Circuit, had already confronted this issue and found the Hostage Taking Act constitutional

against the same Equal Protection Clause claim. In United States v. Lopez-Flores, 63 F.3d 1468 (9th Cir. 1995), cert. denied, 516 U.S. 1082 (1996), the defendants had held hostage for money an alien who had been smuggled illegally into the United States. The defendants argued that the Hostage Taking Act impermissibly classified offenders and victims on the basis of alienage. The Ninth Circuit held that "the [Hostage Taking] statute is constitutional as an exercise of Congress' plenary powers over aliens and foreign relations." Id. at 1470. Rational basis review is appropriate "where foreign policy interests are strongly implicated," id. at 1474, this statute passes that test. Similarly, the Fifth Circuit rejected a virtually identical legal claim in United States v. Santos-Riviera, 183 F.3d 367, 372-74 (5th Cir.) (applying rational basis test to hold that the alien defendant's equal protection rights were not violated by fact that Hostage Taking Act subjected defendant to prosecution when U.S. national in same circumstances could not be prosecuted under the Act), cert. denied, 528 U.S. 1054 (1999).

More recently, the Seventh and Eleventh Circuits have fallen in line with their sister circuits on this issue. In United States v. Montenegro, 231 F.3d 389 (7th Cir. 2000), the Seventh Circuit specifically rejected the same argument that the Act discriminates against aliens because it criminalizes actions by them that would not be illegal if everyone involved were American citizens. Quoting the Lue court at length, the Montenegro court remarked that "[l]ike the Fifth Circuit [in Santos-Riviera], we adopt the reasoning and holding of Lue." The Seventh Circuit held that the distinction based on alienage was rationally related to a legitimate government interest, 231 F.3d at 395, and that the Hostage Taking Act did not violate the Equal Protection Clause by subjecting aliens to prosecution in situations in which U.S. nationals would not be subject to prosecution. The Eleventh Circuit has also so held. See United States v. Ferreira, 275

F.3d 1020, 1024-1027 (11th Cir. 2001) (agreeing "with every other circuit court of appeals that has confronted this issue" and applying rational basis review to hold that the Hostage Taking Act is rationally related to a legitimate government interest and does not violate the right to equal protection by discriminating impermissibly on the basis of alienage).

Defendant Straker, in his motion, acknowledges that a wave of authority stands against his claim, see Straker Motion to Dismiss at 7-8, but nonetheless asks this Court to reconsider and to stand alone contrary to the five U.S. Courts of Appeals which have addressed the issue. Defendant does not, and the government asserts he could not, state any ground upon which to distinguish his legal situation from those of the defendants in Lue and the other four cases. Thus, defendant's argument is doomed by precedent.

The government notes that there is a small distinction between defendant's situation and that of the defendants in the five cases cited above, in that those cases involve aliens prosecuted for acts committed against other aliens in the United States under §1203(a) and (b)(2), while defendant Straker is an alien who committed an act against a U.S. national outside the United States under §1203(a) and (b)(1). If this distinction is of any legal moment, the government submits that it favors the government. Indeed, the interest of the United States in protecting its citizens abroad from heinous criminal acts, such as hostage taking resulting in death, committed by aliens is at least as strong as its interest in protecting victim aliens who suffer such acts within its own borders at the hands of aliens. A nation's sovereign interest in protecting its nationals is a well-recognized basis for jurisdiction under the "passive personality" principle.

Certainly if Congress had a rational basis for making a distinction based on alienage to punish aliens who commit hostage takings within its borders, it has at least as significant an

-6-

interest in protecting its own nationals from suffering such atrocities outside its borders. This argument is supported by the decision of the D.C. Circuit in United States v. Yunis, 924 F.2d 1086 (D.C. Cir. 1991) (holding that Hostage Taking Act authorized subject matter and personal jurisdiction over alien who took hostage United States national abroad). In Yunis, the court endorsed the international law passive personality principle of States exercising extraterritorial jurisdiction over crimes against its nationals "where the state has a particularly strong interest in the crime," as in the hostage taking of its nationals. Id. at 1091. Furthermore, the Yunis court noted that "Congress intended through the Hostage Taking Act to execute the International Convention Against the Taking of Hostages, which authorizes any signatory state to exercise jurisdiction over persons who take its nationals hostage 'if that State considers it appropriate.'" Id. at 1090. Thus, the circumstance that the defendant is an alien who committed a crime against a United States national abroad, rather than an alien present in the United States who committed the same crime in the United States, does not in any way alter the legal analysis of the issue and the determination made by the five U.S. Courts of Appeals that have addressed the issue. Defendant's equal protection claim has no merit, as the distinction based on alienage which subjects him to criminal liability for taking hostage a U.S. national abroad is entirely rational.

**B. The Hostage Taking Act applies to all covered hostage takings, regardless of whether they occur in the context of international terrorism.**

Defendant's argument that the Hostage Taking Act applies only to situations manifesting international terrorism is unsupported. The plain language of the statute clearly and unambiguously indicates that the Act is meant to apply to all instances of hostage taking meeting the statutory criteria and not just to cases of international terrorism. The Supreme Court has held that when the language of a statute is unambiguous, as the Hostage Taking Act is here, "[t]he

inquiry ceases." Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002) (no need to go further to construe Coal Act, since statute is unambiguous). In the instant case, the intent of Congress is clear and unambiguous; an individual is subject to prosecution under the Act if he or she, "whether inside or outside the United States, seizes or detains and threatens to kill, to injure, or to continue to detain another person in order to compel a third person or a governmental organization to do or abstain from doing any act as an explicit or implicit condition for the release of the person detained." 18 U.S.C. § 1203(a) (emphasis added). The statute contains the word "or" between "third person" and "governmental organization" to avoid any confusion that might arise. Therefore, anyone who takes a hostage for ransom–as occurred in the instant case–can be tried under the Hostage Taking Act so long as the other conditions of the statute are met, whether he is a classic terrorist or a common criminal.

The fact that Congress has indicated in other statutes that those statutes apply only to cases manifesting international terrorism is further proof that the Hostage Taking Act was not such a statute. Cf. Barnhart, 534 U.S. at 452 (*quoting* Rusello v. United States, 464 U.S. 16, 23 (1983)) ("it is a general principle of statutory construction that when 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion'"). The lack of a specific reference or limitation to terrorism in the Hostage Taking Act indicates that the Act was not limited to manifestations of international terrorism, as are certain other statutes. For example, under 18 U.S.C. § 2332, the extraterritorial murder statute, which allows the U.S. government to prosecute anyone who kills a U.S. national while outside the United States, Congress included a "Limit on Prosecution" clause. This clause limits

prosecution to cases where the Attorney General certifies that the murder had a terrorist intent in that it was "was intended to coerce, intimidate, or retaliate against a government or a civilian population." 18 U.S.C. § 2332(d). The Hostage Taking Act, on the other hand, contains no such limitation. Thus, it is clear that Congress intended for 18 U.S.C. § 1203 to apply to all instances of hostage taking committed by non-U.S. nationals against U.S. nationals while abroad or against any state's citizen while in the United States, regardless of terrorist intent.

### III. Conclusion

WHEREFORE, the government requests that the Court deny defendant Straker's motion to dismiss the indictment.

Respectfully submitted,

JEFFREY A. TAYLOR (D.C. Bar No. 498610)
United States Attorney

By: /S/
_____

JEANNE M. HAUCH (D.C. 426585)
Assistant United States Attorney
National Security Section
555 Fourth Street, N.W., 11th Floor
Washington, D.C. 20530
(202) 514-5776
Jeanne.M.Hauch@usdoj.gov


BRUCE R. HEGYI (D.C. Bar No. 422741)
Assistant United States Attorney
Federal Major Crimes Section
555 Fourth Street, N.W., Room 4848
Washington, D.C. 20530
(202) 305-9637
(202) 353-9414 (fax)
www.bruce.hegyi@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing was served upon the following counsel, electronically, on this 6th day of August, 2008:

Steven R. Kiersh
5335 Wisconsin Avenue, N.W.
Suite 400
Washington, DC 20015
*Counsel for Anderson Straker*

John J. Carney
Carney & Carney
601 Pennsylvania Avenue, NW
Suite 900 - South Building
Washington, DC 20004
*Counsel for Wayne Pierre*

Pleasant S. Brodnax, III
The Mills Building, Suite 400
1700 Pennsylvania Avenue, NW
Washington, DC 20006
*Counsel for Kevin Nixon*

Patrick M. Donahue
Donahue Law Firm
18 West Street
Annapolis, MD 21401
*Counsel for Christopher Sealy*

/s/

Bruce R. Hegyi