IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** §<br>§<br>§<br>§<br>- vs - §      CRIMINAL No.   06-102-02 (JDB)<br>§<br>§<br>**ANDERSON STRAKER,** §<br>**KEVIN NIXON,** *el al.* §<br>            Defendants. §<br>§ | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT STRAKER'S FIRST MOTION TO COMPEL DISCOVERY AND DEFENDANT NIXON'S MOTION TO JOIN SUCH MOTION

The United States of America ("United States" or "Government"), for the reasons set forth below, opposes defendant Anderson Straker's First Motion to Compel Discovery [Document #204] ("Mr. Straker's Motion"), and defendant Kevin Nixon's Motion to Adopt and Join various motions  [Document #218] ("Mr. Sealey's Motion"),[1] as it relates to Mr. Straker's Motion herein, and urges that they be, in all things, denied.

### *Nature of the Case*

Defendant Anderson Straker ("Mr.  Straker" or "defendant") is one of twelve Trinidadian nationals who have been indicted in the District of Columbia for Conspiracy to Commit Hostage Taking Resulting in Death and Hostage Taking Resulting in Death, both charges in violation of 18 U.S.C. § 1203(a).  According to the allegations of the superseding Indictment, beginning on or about February 1, 2005 and ending on or about April 15, 2005, Mr. Straker and his co-conspirators, embarked upon a common plan to obtain the money of an American citizen, Balram

---

[1]  The Government has no objection to Mr. Sealey joining Mr. Straker's Motion.

Maharaj, who was a visitor to the Island of Trinidad and who had relatives there. The conspirators' initial plan was to kidnap Mr. Maharaj's 5-year old son, Dinesh Maharaj, and to hold Dinesh for ransom. However, the conspirators later discarded the initial plan and determined to kidnap Balram Maharaj and sought to obtain a ransom of Mr. Maharaj's money, from Mr. Maharaj's relatives, for his release. On April 6, 2005, in accordance with their plan, Balram Maharaj was abducted. and a ransom of $3,000,000 Trinidad (approximately $500,000 US) was demanded for his release. Mr. Maharaj was held captive at a hideout in a mountainous jungle region of Trinidad. On or about April 13, 2005, Mr. Maharaj expired at the remote hideout, as he languished in the hands of the conspirators. Following Mr. Maharaj's death, members of the conspiracy dismembered his body and buried his body parts at another remote location in the mountainous jungle.

By April 15, 2005, the ransom demands had ceased.

In January of 2006, Mr. Maharaj's dismembered and decomposed body was located in a mountainous jungle region in Trinidad.

### The Allegations of Defendant Straker's Motion

In his Motion [Document #204], Mr. Straker states that the arrests of (various) of the defendants in the Republic of Trinidad & Tobago did not occur until nine months after the abduction of the victim, following the recovery of the victim's remains. [Straker Motion, page 1] Mr. Straker claims a series of rewards were posted for information leading to the arrest of individuals involved in the kidnapping of the victim. [Id.] Mr. Straker's Motion (errantly) describes the "Crimestoppers" organization in Trinidad as being an "international organization," but correctly states that it offered a local reward. [ Id.] Mr. Straker's Motion claims that the

Crimestoppers reward offer "produced an amount of information not known by defendant [Straker]." [Id., pages 1-2]  The Motion says that the United States "issued a second award, apparently in April of 2005, offering $10,000 for the kidnap victim's release." [Id., page 2][2] Mr. Straker acknowledges: "It is known that at least one person, David Suchit, responded to one of the reward offers from testimony introduced during the course of the proceedings against him in this Court." [Id.] The Motion accurately recites that Mr. Straker forwarded to the Government a letter dated November 27, 2007 seeking "broad" discovery of various items, one of which was the names and addresses of each person or entity who responded to any offer of reward. [Id.] The Motion correctly states that the Government responded on December 6, 2007, to Mr. Straker's requests and that the Government's response indicated Mr. Straker's request exceeded the discovery authorized by Rule 16 and directed Mr. Straker to the testimony (and exhibits) in the David Suchit trial that addressed the rewards offered and the known responses.[3] [Id.] Nearing its close, Mr. Straker's Motion correctly submits that Rule 16 does not constrain the Government's obligations under *Brady v. Maryland*. [Id.]   Finally, Mr. Straker's Motion "suggests" that offers of rewards are:

---

[2] The United States Embassy in Trinidad issued a single press release, on April 27, 2005, *inter alia*, offering a single reward "for information leading to the location of Mr. Maharaj, as well as the arrest and conviction of those responsible for the kidnapping."  A copy of that Release was introduced as Government Exhibit 115 in the David Suchit trial, and a copy of which was previously provided in discovery to all defendants.

[3] In addition, the Government response interjected: "Moreover, to the extent your letter seeks to require the Government to conduct other or further investigations, such requests exceed the scope of permissible discovery. *See, e.g.*, United States v. Bin Laden, 2005 WL 287404, *12 (S.D.N.Y. 2005) (prosecution has no obligation to conduct a separate investigation for the purpose of responding to the defendant's discovery requests)." [Govt. 12/6/07 Letter, page 1 (copy attached)] Mr. Straker was also assured the Government understood its obligations under *Brady v. Maryland* and that it would discharge its obligations thereunder. [Id.]

> [P]otentially exculpatory as they imply that a person or persons other than
> Anderson Straker may have been responsible for acts attributed to him and should
> therefore be disclosed prior to trial so that an appropriate investigation can be
> conducted. Further, if information was received pursuant to an offer of a reward
> that contradicts the testimony of the government's cooperating witnesses, that
> information could be used to impeach the cooperators and should also be
> disclosed for that reason.

[Id., pages 2-3]

### Mr. Nixon's Motion to Adopt and Joinder of Mr. Straker's Motion

For his part, Mr. Nixon's Motion [Document #218] seeks to adopt and join Mr. Straker's

Motion, but adds alleges no additional facts and cites no further authorities.[4]

For the reasons set forth below, Mr. Straker's Motion, as joined by Mr. Nixon, is without

merit and should be denied.

### DEFENDANTS' MOTIONS ARE WITHOUT PROPER FOUNDATION OR MERIT AND SHOULD BE DENIED

Mr. Straker's Motion, as joined by Mr. Nixon, is misguided for at least six reasons. *First*,

the Government's ordinary discovery obligations are set forth in Rule 16, and the Government has

met its obligations thereunder and has produced the documents and things that are "within the

government's possession, custody, or control...." *See* Rule 16(a)(1)(E). Mr. Straker's immediate

request exceeds the parameters of Rule 16. *Second*, the Government is fully aware of its

obligations under *Brady v. Maryland* and has, and will continue to, discharge its obligations

thereunder. *Third*, the Government is not required to conduct a further and/or different

investigation in order to respond to a defendant's discovery requests. *Fourth*, Mr. Straker's

request is, in essence, an impermissible effort to require the Government to disclose the identity

_____

[4] The Government has no objection to Mr. Nixon's request that he be permitted to join
Mr. Straker's Motion.

(or identities) of a possible confidential informant. *Fifth*, even assuming *arguendo* that defendant's request was well-founded, in the *Suchit* case, the Government expended its best efforts to obtain information from Crimestoppers in Trinidad, but was unsuccessful in its efforts. *Sixth*, on information and belief, Mr. Suchit was the only person who contacted Crimestoppers in Trinidad about the kidnapping of Balram Maharaj in response to an offer of reward.

Rule 16 Discovery

The is "no general constitutional right to discovery in a criminal case, and *Brady* does not create one...." Weatherford v. Bursey, 429 U.S. 545, 559 (1977). Generally speaking, the Governments discovery obligations in a criminal matter are set forth in Rule 16 ("Discovery and Inspection"). With regard to "documents and objects," Rule 16(a)(1)(E) provides:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of those items, *if the item is within the government's possession, custody, or control* and:
>
> > (i)    the item is material to preparing the defense;
> >
> > (ii)   the government intends to use the item in its case-in-chief at trial; or
> >
> > (iii)  the item was obtained from or belongs to the defendant.

[Id. (Emphasis provided)]   As is readily apparent, by its terms, Rule 16 applies only to items within the Government's possession, custody, or control.

Because, as more fully set forth below, the Government does not have in its possession, custody, or control any other or further items beyond what it has already produced to defendants, Mr. Straker's Motion is without merit and should be denied.

*Brady* Disclosures

Mr. Straker's Motion claims he requires the names and addresses of all callers to Crimestoppers because this could lead to "potentially exculpatory" information.    Leaving aside for the moment the fact that Mr. Straker confessed at length to the FBI his involvement in the conspiracy and kidnapping of Balram Maharaj, following the waiver of his *Miranda* rights,[5] the Government is well aware of its obligation to disclose all such information required by Brady v. Maryland, 373 U.S. 83 (1963), and it has made timely disclosure of all such information and will continue to do so, if new information is discovered.  The possibility that unknown others might also have been conspirators is hardly exculpatory of Mr. Straker (or Mr. Nixon.)  With respect to disclosure required under Giglio v. United States, 405 U.S. 150 (1972), it is our intention to provide this information at the same time we disclose Jencks material, in advance of the witnesses testimony so that such information may be used during cross-examination. *See also* United States v. Phillips, 854 F.2d 273, 276 (7th Cir. 1988).  Consistent with the law of this Circuit, the Government satisfies its discovery obligations where it provides impeachment information concerning its witnesses in time for defendants to make use of it.  United States v. Wilson, 160 F.3d 732, 742 (D.C. Cir. 1998), *cert. denied*, 528 U.S. 828 (1999).

Because the Government has discharged its current obligations under *Brady*, defendants' Motions are without merit and should be denied.

_____

[5] Hence, the discovery of actual "exculpatory" *Brady* information is vanishingly improbable.

-6-

<u>The Government Has No Obligation To Conduct Other or Further Investigations</u>

To the extent Mr. Straker's Motion seeks to require the Government to conduct other or further investigations in this matter to satisfy Mr. Straker's discovery requests, his Motion is misguided. "[T]he prosecutor is not required to conduct a separate investigation for the purpose of responding to a defendant's discovery requests." <u>United States v. Giffen</u>, 379 F.Supp.2d 337, 343 (S.D.N.Y. 2004); *accord* <u>United States v. Avellino</u>, 136 F.3d 249, 255 (2d Cir. 1989) (prosecutor had no duty to inquire of other offices not working with prosecutor's office on the case); <u>United States v. Cahelha</u>, 456 F.Supp.2d 350, 367-68 (D.Conn. 2006) (same); <u>United States v. Bin Laden</u>, 2005 WL 287404 at *12 (S.D.N.Y. 2005) (same); <u>United States v. Volpe</u>, 42 F.Supp.2d 204, 221 (E.D.N.Y. 1999) (no duty to conduct investigation where two prosecution teams within same U.S. Attorney's Office were not involved in joint investigation and where prosecution team did not have access to material requested); <u>United States v. Guerrerio</u>, 670 F.Supp. 1215, 1219 (S.D.N.Y. 1987) (federal prosecutor had no duty to investigate materials held by Bronx District Attorney, when there was no joint investigation between the U.S. Attorney's Office and the Bronx D.A.'s Office). Rather, the prosecution has the obligation to disclose evidence in its possession or reasonably available to it that is both favorable to the accused and material either to guilt of to punishment. <u>United States v. Bagley</u>, 473 U.S. 667, 674 (1985).

Because the Government does not have an obligation to conduct a further investigation in order to respond to Mr. Straker's discovery requests, Mr. Straker's Motion is without merit and should be denied.

### The Government Need Not Ordinarily Disclose The Identity of Informants

At bottom, Mr. Straker's Motion seeks the identities of persons who may have contacted Crimestoppers and provided the Trinidadian government – under a guarantee of anonymity – with confidential information in a criminal matter. Thus, in essence, Mr. Straker is seeking disclosure of the name and address of confidential informants to the Trinidadian government, as well as the information provided by such confidential informants. In making the determination of whether disclosure of a witness to a defendant is necessary, the Court must balance the public's interest in law enforcement and protecting the informant's identity against the defendant's right to prepare a defense. Roviaro v. United States, 353 U.S. 53, 62 (1957).

In *Roviaro*, the Supreme Court recognized "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of the law." Id. at 59 (*citing, inter alia*, Vogel v. Gruaz, 110 U.S. 311, 316 (1884) and In re Quarles, 58 U.S. 532 (1895)). The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation. Id. The Court also held, for the first time in its history, that a trial court had erred by refusing to order disclosure of an informant's identity.

The underlying facts of *Roviaro* are vitally important. The defendant in *Roviaro* was charged with the illegal transportation and sale of narcotics to one "John Doe," a confidential police informant. Id. at 55. During the trial the informant's part in the charged transaction and his conversation with the defendant were described in detail by government witnesses. Id. at 55- 57.

-8-

The evidence revealed that the informant was the sole participant, other than the defendant, in the crimes charged; that he had been present with the defendant throughout the commission of the alleged crimes; and that he "was the only witness in a position to amplify or contradict the testimony of government witnesses." Id. at 55, 64. Under these circumstances, the Court reasoned, the informant's "identity and testimony" were so "highly material" and "vital" to the defense, id. at 63, that disclosure was mandated by "the fundamental requirements of fairness," id. at 60. As a general matter, the Court held, motions seeking disclosure of an informant's identity must be resolved by "balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." Id. at 62.

In such a balancing, defendants bear a "heavy burden in establishing that disclosure is warranted." United States v. Mangum, 100 F.3d 164, 172 (D.C. Cir. 1996). In their motions, defendants generally – as here – speculate that if the Government provides an informant's name, and the defense counsel could speak with the informant, the informant might have useful and relevant information for the defense. "Mere speculation that the informer might possibly be of some assistance is not sufficient to meet [defendant's] burden." Id. (quoting United States v. Skeens, 449 F.2d 1066, 1070 (D.C. Cir. 1971)). "If the informer's relation to the acts leading directly to or constituting the crime may be assumed from a fertile imagination of counsel, the Government in practically every case would have to prove affirmatively that the informer had not done any such likely acts. Having done that, all would be revealed and the informer privilege, deemed essential for the public interest, for all practical purposes would be no more." Skeens, 449 F.2d at 1070-71 (quoting Miller v. United States, 273 F.2d 279, 281 (5th Cir. 1959)).

As is readily apparent, in his Motion, Mr. Straker engages merely in unfounded speculation that "responses to offers of reward are potentially expulpatory as they imply that a person or persons other than Anderson Straker may have been responsible for acts attributed to him and should therefore be disclosed prior to trial so that an appropriate investigation can be conducted." [Straker Motion, page 2] Here, even if persons other than David Suchit had called Crimestoppers, Mr. Straker fails to meet his heavy burden as he advances nothing more than bald speculation.[6] *See* United States v. Mangum, 100 F.3d at 172.

Because Mr. Straker's Motion, joined by Mr. Nixon, has failed to meet its heavy burden, the Motion is without merit and should be denied.

The Government Sought Unsuccessfully To Obtain Information
From Trinidadian Crimestoppers

In its prosecution of indited co-conspirator David Suchit, the Government repeatedly sought to obtain information from the Trinidadian Crimestoppers, and expended substantial energies in its efforts. In *Suchit*, the issue presented was that *defendant Suchit* sought to establish that he had, *in fact*, contacted the Trinidadian Crimestoppers about the kidnapping of Balram Maharaj and reported what he knew. Despite the Government's best efforts (including, *inter*

---

[6] Moreover, unlike *Roviaro*, in the instant conspiracy, there were numerous conspirators and actors involved over many days and in various geographic settings, which readily distinguishes the immediate facts from *Roviaro*, where the the informant was the sole participant, other than the defendant, in the crimes charged; that he had been present with the defendant throughout the commission of the alleged crimes; and that he "was the only witness in a position to amplify or contradict the testimony of government witnesses." Id. at 55, 64. Here, the information sought, if any, that might have been provided to Crimestoppers by persons other persons who acted with the defendant. For instance, tips to Crimestoppers in the United States often come from people who have overheard a conversation at a bar, or from a spouse or loved one, or have heard a rumor, or who have put "two plus two" together, based on a description of the crime or the perpetrator, or because of their observations of someone without visible income who suddenly demonstrates conspicuous wealth.

-10-

*alia*, a request from the American Ambassador), and despite the fact that Mr. Suchit and his attorney offered to provide a written waiver in support of the request, the Trinidadian Crimestoppers made clear they would never provide the information requested. In support of their position, the Government was informed, the Trinidadian Crimestoppers was protecting its larger public interest in maintaining and encouraging a free-flow of information to it about criminal conduct in Trinidad. Because Trinidadian Crimestoppers guaranteed anonymity to its tipsters,[7] Crimestoppers feared that *any* disclosure by it could jeopardize its overall utility. Hence, Crimestoppers maintained an unwavering policy not to provide information on/from its tipsters.

Because the Government does not have this information and because the Government previously used its best efforts in a series of unsuccessful attempts to obtain information from Crimestoppers in Trinidad, the relief sought in Mr. Straker's Motion is without merit and should be denied.

On Information and Belief, Only Mr. Suchit Called Crimestoppers<br><u>Seeking a Reward</u>

Further, on information and belief, only previously-indicted David Suchit called Trinidadian Crimestoppers seeking a reward for providing information about the kidnapping of Balram Maharaj. Because David Suchit is believed to be the only person who contacted Crimestoppers in Trinidad and offered information on the kidnapping of Balram Maharaj in exchange for a reward, Mr. Straker's Motion is without merit and should be denied.

---

[7] In the *Suchit* case, it was learned that Trinidadian Crimestoppers does not even obtain the true name of the tipster, but rather assigns the caller a secret code, which must be used by the caller on further contacts and to obtain the reward if the information proves valuable.

WHEREFORE, for each of the independent reasons set forth above, defendant Anderson Straker's First Motion to Compel Discovery [Document #204] and defendant Kevin Nixon's joinder of Mr. Straker's Motion [Document #218], are each, independently and in combination, without merit, and they should be, in all things, denied.

 Respectfully submitted,

JEFFREY A. TAYLOR (D.C. Bar No. 498610)
United States Attorney

 /S/

By:  _____
BRUCE R. HEGYI (D.C. Bar No. 422741)
Assistant United States Attorney
Federal Major Crimes Section
555 Fourth Street, N.W., Room 4848
Washington, D.C. 20530
(202) 305-9637
(202) 353-9414 (fax)
www.bruce.hegyi@usdoj.gov

JEANNE M. HAUCH (D.C. Bar No. 426585)
Assistant United States Attorney
National Security Section
555 Fourth Street, N.W., 11th Floor
Washington, D.C. 20530
(202) 514-5776

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing was served upon the following counsel, electronically, on this 8th day of August, 2008:

Steven R. Kiersh
5335 Wisconsin Avenue, N.W.
Suite 400
Washington, DC 20015
*Counsel for Anderson Straker*

John J. Carney
Carney & Carney
601 Pennsylvania Avenue, NW
Suite 900 - South Building
Washington, DC 20004
*Counsel for Wayne Pierre*

Pleasant S. Brodnax, III
The Mills Building, Suite 400
1700 Pennsylvania Avenue, NW
Washington, DC 20006
*Counsel for Kevin Nixon*

Patrick M. Donahue
Donahue Law Firm
18 West Street
Annapolis, MD 21401
*Counsel for Christopher Sealy*

_____/s/_____

Bruce R. Hegyi