UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**

      v.                                            Criminal No. 06-102 (JDB)

**ANDERSON STRAKER**

### REPLY TO OPPOSITION TO MOTION TO SUPPRESS STATEMENTS

Defendant, by and through undersigned counsel, in reply to the government's opposition to Motion to Suppress statements, does hereby set forth as follows:

The United States boldly asserts that there was no joint venture between the United States and Trinidad. In so doing, the government ignores undisputed facts such as that representatives of both countries jointly recovered the remains of the decedent, representatives of both countries jointly conducted the autopsy of the Mr. Maharaj, representatives of both countries regularly communicated about progress of the investigation into the kidnapping of Balram Maharaj, and there were rewards for information concerning the kidnapping issued both in Trinidad and by representatives of the United States. Defendant further submits that he was jointly interrogated by agents of the United States and Trinidad.[1]

A joint venture exists if "United States officials are substantially involved, or foreigners are acting as their agents or employees." *United States v. Covington*, 783 F. 2d 1052, 1056 (9th Cir. 1986). The determination of whether a joint venture exists is a factual determination made by the court after a careful scrutiny of the attendant facts in each particular case. *United States v. Baker*, 888 F. Supp. 1521, 1533-34 (D. Hawaii 1995)(citation omitted). Since the determination of joint venture is so fact sensitive, most cases addressing the issue simply set forth the facts of the case and either find, without much

---

[1] The United States disputes that joint interrogations occurred. Accordingly, this factual dispute will have to be resolved by the Court at a hearing on the Motion to Suppress Statements.

1

further discussion, that due to the extent of the United States participation in an investigation, a joint venture existed[2], or that the limited nature of the United States participation in an investigation did not constitute a joint venture.[3] While mere presence of a United States agent does not automatically constitute a joint venture, see *Kilday v. United States*, 481 F.2d 655, 656 (5th Cir. 1973), mere presence of an American agent, coupled with a higher level of coordination or cooperation between the United States and a foreign nation, can result in a finding of a joint venture. See *United States v. Emery*, 591 F.2d 1266, 1267-1268 (9th Cir. 1978).

Because the issue of whether a joint venture exists is so fact intensive, defendant urges the Court to defer ruling on the existence of a joint venture until such time as hearing on this motion is held and this particular issue can be fully developed.[4]

If the Court finds that a joint venture existed between the United States and Trinidad in the investigation of the kidnapping of Balram Maharaj, and that either of the statements made to the Trinidadian authorities was involuntary within the meaning of the Fifth Amendment, the July 29, 2007 statement to the F.B.I. should be suppressed even if Miranda warnings were given if that statement was the product of an ongoing fear instilled by the circumstances of defendant's detention commencing with his arrest by officials in Trinidad.

Similarly, if the Court finds that a joint venture did not exist, the court can suppress the statement to the F.B.I. if it determines that the statement was the product of an unbroken chain of coercion. Statements may be involuntary because they are made under the threat of continuing threat

---

[2] See *United States v. Emery*, 591 F.2d 1266, 1267-1268 (9th Cir. 1978) where United States law enforcement alerted Mexican authorities of a possible drug transaction to take place in Mexico, coordinated surveillance, supplied pilot for transporting defendants to holding facility and gave the signal that instigated arrest, Mexican authorities found to be acting within the meaning of the Fifth Amendment.

[3] See *United States v. Yousef*, 327 F.3d 56 (2d. Cir.2003). No joint venture found where only support of allegation was that defendant claimed he heard Jordanian authorities speak English on the telephone and Jordanian officials notes included a reference to a request for Jordanians "to help" in apprehending defendant

[4] Defendant notes that the United States is resisting defendant's discovery request for all communications between Trinidad and the United States concerning the investigation of the kidnapping of Balram Maharaj. Defendant submits that this resistance is misguided and is impeding a full analysis of whether a joint venture existed.

of physical or psychological abuse. See *Arizona v. Fulminante*, 499 U.S. 279 (1981). Defendant submits that the abuse he suffered at the hands of both the Trinidadian and United States officials while being held in Trinidadian detention facilities created a genuine fear of further abuse that was not dissipated by the time he was placed in the exclusive custody of the F.B.I on July 29, 2007. Because defendant maintains that he was abused by both Trinidadian officials and a representative of the F.B.I. while in a jail in Trinidad, the statement provided to the F.B.I. on July 29, 2007 was a "fruit of the poisonous tree" and therefore admissible. *Oregon v. Elstad*, 470 U.S. 298 (1985). While the "fruit of the poisonous tree" doctrine does not apply to a bare Miranda violation—that is, a statement that is inadmissible even though voluntary because of the state's failure to abide by the requirements of Miranda, See *United States v. Patane*, 542 U.S. 630 (2004)—the doctrine does apply to the fruits of a statement that is involuntary within the meaning of the Due Process Clause, including a subsequent purportedly voluntary statement by the defendant.  " There is a vast difference between the direct consequences flowing from coercion of a confession by physical violence or other deliberate means calculated to break the suspect's will and the uncertain consequences of disclosure of a guilty secret freely given in response to an unwarned but noncoercive question." *Elstad* at 312.

     Defendant submits that the government bears the burden of demonstrating that the taint from the earlier confrontation with the Trinidadian authorities and F.B.I. official had in fact dissipated when he was questioned by the F.B.I. on July 29, 2007. In *Elstad,* the Supreme Court identified three factors that bear on the question in issue. "When a prior statement is actually coerced, the time that passes between confessions, the change in place of interrogations, and the change in the identity of the interrogators all bear on whether that coercion has carried over into the second confession." 470 U.S. at 310., Ultimately, the government must prove that the second statement was the product of "an intervening independent act of a free will, " *Wong-Sun v. United States*, 371 U.S. 471,486, (1963), not influenced by the prior coercion. That proof most often takes the form of showing a "break in the series

3

of events" sufficient to allow the defendant to recover from the initial coercion and exercise his own free will. *Elstad* at 311.

Defendant finally submits that if the conduct of the Trinidadians, even if done without any knowledge or assistance from United States officials, "shocks the conscience" of the Court, the July 29, 2007 statement to the F.B.I. must be suppressed. Due process is violated where the government conduct is so egregious that is shocks the conscience and violates the "decencies of civilized conduct." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). The shock the conscience standard can apply to coerced confessions even when obtained by agents of a foreign country. See *United States v. Maturo,* 982 F.2d 57, 60-61 (2d. Cir. 1992)

Because "those subjected to coercive police interrogations have an automatic protection from the use of their involuntary statements in any subsequent criminal trial", Chavez v. *Martinez,* 538 U.S. 760, 769 (2003), the July 29, 2007 statement to the F.B.I. must be suppressed as evidence against Anderson Straker.

Respectfully submitted,

_____/s/_____
Steven R. Kiersh #323329
5335 Wisconsin Avenue, N.W., Suite 440
Washington, D.C. 20015
(202) 347-0200

**CERTIFICATE OF SERVICE**

I Hereby certify that a true an accurate copy of the foregoing was served, VIA PACER, on this the 24th day of August, 2008 upon Bruce Hegyi, Esquire and Jeanne Hauch, Esquire, Assistant U.S. Attorneys, and all other counsel of record.

_____/s/_____
Steven R. Kiersh